**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**MICHAEL JAMES LAYOU,**

Plaintiff,

- v -

Civ. No. 9:11-CV-0114
(LEK/RFT)

**DOUGLAS K. CREWS**, *Patrolman, Village of Phoenix*
*Police Department*, **MICHAEL STAFFORD**,
*Administrator, Oswego County Correctional Facility*,
**COUNTY OF OSWEGO**, **ESTATE OF RODNEY**
**CARR,**

Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

**MICHAEL JAMES LAYOU**
Plaintiff, *Pro Se*
09-B-0819
Gowanda Correctional Facility
P.O. Box 311
Gowanda, NY 14070

**OFFICE OF FRANK W. MILLER**          **FRANK W. MILLER, ESQ.**
Attorney for Defendants                       **BRYAN N. GEORGIADY, ESQ.**
6575 Kirkville Road
East Syracuse, NY 13057

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Michael James Layou brings this action, alleging various state and federal

civil rights violations, pursuant to 42 U.S.C. §§ 1981(a), 1983, and 1985(a). *See generally* Dkt. No.

50, 2nd Am. Compl.  Now before this Court is Defendants' Motion for Judgment on the Pleadings,

pursuant to FED. R. CIV. P. 12(c).  Dkt. No. 53 (hereinafter "Defs.' Mot.").  Plaintiff opposes the

Motion.  Dkt. No. 56.

# I. STANDARD OF REVIEW

FED. R. CIV. P. 12(c) provides, in pertinent part, "[a]fter the pleadings are closed . . . any party may move for judgment on the pleadings." "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816 (1994) (citations omitted). On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l. Ass'n v.*

*Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

## II. DISCUSSION

### A. Background

The following facts, taken from the Plaintiff's Second Amended Complaint, are accepted as true for the purposes of deciding Defendants' Motion for Judgment on the Pleadings.

On February 1, 2008, Plaintiff and a female passenger[1] pulled into the parking lot of their friend's apartment complex at 56 Davis Street, in the Village of Phoenix, in the County of Oswego. 2nd Am. Compl. at ¶¶ 9 & 23. Immediately thereafter, Defendant Crews, a uniformed Patrolman with the Village of Phoenix Police Department, engaged his emergency lights and pulled his vehicle behind Plaintiff's at a ninety-degree angle blocking Plaintiff's ability to move his vehicle out of the parking lot. Defendant Crews approached the driver's side window of Plaintiff's vehicle and informed Plaintiff that he was searching for two burglary suspects. After acknowledging that neither Plaintiff nor his passenger were the suspects whom he sought, Defendant Crews told Plaintiff and his passenger that it was their "lucky day," and told them to leave the area. *Id.* at ¶¶ 10–14.

While waiting for Defendant Crews to move his vehicle, Plaintiff and his passenger decided to switch seats. While walking around the rear of the vehicle, Plaintiff reached into his pocket for a cigarette. Defendant Crews pulled out his revolver and ordered Plaintiff and passenger to lay on the ground. *Id.* at ¶¶ 15, 20–23, & 25. Although the passenger immediately complied, Plaintiff lifted his hands in the air, but refused to lay on the ground. Both Defendant Crews and Plaintiff's passenger yelled at Plaintiff to comply. Defendant Crews then walked up behind Plaintiff and pepper sprayed him in the face. Plaintiff, pursued by Defendant Crews, ran around the apartment building and eventually made his way back to the parking lot and laid down beside his vehicle.

---

[1] The passenger is not a party to this action.

Moments later, two New York State Troopers arrived and searched Plaintiff.[2] *Id.* at ¶¶ 26–36.

Plaintiff was then taken to the Village of Phoenix Police Station where Defendant Crews handcuffed and shackled him to a bench for approximately eight hours. While at the station Plaintiff's fiancee attempted to call him on his phone several times. Defendant Crews "consistently answered the phone being unprofessional." *Id.* at ¶¶ 37–39.

Thereafter, Chief Rodney Carr[3] loosened Plaintiff's shackles and handcuffs and interviewed him. *Id.* at ¶ 42. Later that same day, February 1, 2008, Plaintiff was arraigned on charges of resisting arrest, obstructing governmental administration, and criminal possession of a controlled substance. Plaintiff was then remanded to the Oswego County Correctional Facility ("OCCF") where he was held without bail. *Id.* at ¶ 43.

Plaintiff received permission to proceed *pro se* at his criminal trial, and on January 14, 2009, the Honorable Walter Hafner, Jr., New York State County Court Judge, sent a letter to Defendant Michael Stafford, the Administrator of OCCF, stating that Plaintiff should be provided reasonable access to the county law library while awaiting trial. *Id.* at ¶ 55; Dkt. No. 56, Pl.'s Opp'n, App., at p. 16, Lt., dated Jan. 14, 2009. Plaintiff was given a total of two and a half hours, a Gilbert Law book, and a Blacks Law Dictionary to prepare for trial. 2nd Am. Compl. at ¶¶ 55 & 56. At trial, Plaintiff was convicted of a reduced drug possession charge, resisting arrest, and obstruction of governmental administration. All three convictions were later reversed on appeal. *Id.* at ¶¶ 57, 59, & 62; Pl.'s Opp'n, at p. 1.

---

[2] The extent of the search, as well as what if anything was recovered as a result of the search, is unclear.

[3] Chief Carr's Estate was substituted as Defendant for Chief Carr after he passed away.

## B. Overview of Plaintiff's Claims

When construed liberally, Plaintiff's Second Amended Complaint can be interpreted to raise the following claims:

(1) a claim for intentional infliction of emotional distress, pursuant to state law;
(2) claims under the Fourth and Fourteenth Amendments, pursuant to § 1983, including
    (a) unlawful seizure, (b) unlawful search, (c) excessive force, (d) false arrest, (e) malicious use of criminal process, (f) malicious prosecution, and (g) denial of access to the courts;
(3) and municipal liability pursuant to *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978), alleging that Defendant County of Oswego maintained an unconstitutional policy, custom, or procedure;
(4) claims pursuant to § 1981(a) alleging intentional discrimination; and
(5) claims pursuant to § 1985(3) that he was the target of a conspiracy to deprive him of his constitutional rights.

*See generally* 2nd Am. Compl.

## C. State Law Claim

Plaintiff claims that while detained at the Phoenix Police Station, his fiancée repeatedly called his cell phone and Defendant Crews "consistently answered the phone being unprofessional. . . . [taking] pleasure in causing both plaintiff and the woman caller extreme emotional pain." 2nd Am. Compl. at ¶ 39. Defendants argue that Plaintiff has failed to state a claim for the intentional infliction of emotional distress. Dkt. No. 53-1, Defs.' Mem. of law, at p. 16. We agree and, therefore, we recommend that Defendants' Motion be **GRANTED** as to this claim.

There are four elements to the cause of action for intentional infliction of emotional distress: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (N.Y. Ct. App. 1993). This cause of action is highly disfavored under New York law, *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 345 (S.D.N.Y. 2000), and its requirements are "rigorous and difficult to satisfy," *Howell v.*

*New York Post Co.*, 81 N.Y.2d at 122 (citation omitted); *Roach v. Stern*, 252 A.D.2d 488, 491 (N.Y. App. Div., 2d Dep't 1998) (the "rigorous and difficult to satisfy" purpose is to filter out trivial complaints). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. New York Post Co.*, 81 N.Y.2d at 122 (citing *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (N.Y. Ct. App. 1983)). A court may decide whether alleged conduct is sufficiently outrageous as a matter of law. *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 324 (S.D.N.Y. 2008) (citing *Howell v. New York Post Co.*, 81 N.Y.2d at 121). Further, since intentional infliction of emotional distress does not have any proscribed specific conduct as compared to other common law actions, it should be invoked as a matter of last resort. Thus, it is often "[p]recluded where the offending conduct is embraced by a traditional tort remedy." *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 270 (N.Y. App. Div., 1st Dep't 1998) (citations omitted).

Here, Plaintiff's *ipse dixit* allegation that he suffered "severe emotional distress" as a result of Defendant Crews's so-called "unprofessional" behavior is hardly sufficient to plausibly establish that Defendant Crews's behavior was "extreme and outrageous." Consequently, Plaintiff's claim for intentional infliction of emotional distress should be dismissed. *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d at 270.

### D. § 1983 Claims

### 1. Fourth Amendment Claims

Plaintiff alleges that Defendant Crews, while in uniform and acting under color of state law, violated his Fourth Amendment rights by (a) blocking his vehicle, (b) unreasonably pepper spraying him in the face and "inhumanely" handcuffing him to a bench at the police station, (c) arresting him

without probable cause, and (d) illegally searching him incident to an unlawful arrest. *See generally* 2nd Am. Compl.

### a. Unlawful Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Consistent with the Fourth Amendment, "the police can stop and briefly detain a person for investigative purposes." *United States v. Sokolow,* 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio,* 392 U.S. 1, 30 (1968)). "An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion." *Ornelas v. United States,* 517 U.S. 690, 693 (1996) (citing, *inter alia,* *Terry v. Ohio,* 392 U.S. at 88). Known as a *Terry* stop, such detentions require that "the officer [have] a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow,* 490 U.S. at 7 (quoting *Terry v. Ohio,* 392 U.S. at 30); *United States v. Jenkins,* 452 F.3d 207, 212 (2d Cir. 2006). It is also clear that the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." *Whren v. United States,* 517 U.S. 806, 809–10 (1996).

While "[a]rticulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible," the Supreme Court has "described reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas v. United States,* 517 U.S. at 695–96 (quoting, *inter alia,* *United States v. Cortez,* 449 U.S. 411, 417–18 (1981)); *see also Florida v. J.L.,* 529 U.S. 266, 271 (2000) ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their [seizure].")). Further, "the proper inquiry is not whether each fact considered in isolation denotes unlawful behavior, but whether all

the facts taken together support a reasonable suspicion of wrongdoing." *United States v. Lee,* 916 F.2d 814, 820 (2d Cir. 1990); *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (stating that courts must look at the "totality of the circumstances" when making reasonable-suspicion determinations); *see also Stansbury v. Wertman,* 721 F.3d 84, 92 (2d Cir. 2013) (same). The court evaluates the totality of the facts from the perspective of a trained and experienced officer. *See United States v. Cortez,* 449 U.S. at 418.

Here, Plaintiff alleges that Defendant Crews, with his emergency lights engaged, pulled up behind Plaintiff's vehicle blocking him from leaving the parking lot. 2nd Am. Compl. at ¶ 10. According to Plaintiff, there was no correlation between the description of the burglary suspects whom Officer Crews was allegedly searching for and Plaintiff or his passenger. The burglary suspects fled on foot, not in a vehicle, and Detective Crews knew one of the suspects and had a description of the other, which did not match Plaintiff or his passenger. *See* 2nd Am. Compl. at ¶¶ 12–13; *see also* Pl.'s Opp'n at pp. 2–3 & App. at p. 1, Oswego Co. 911 Tr., dated Feb. 1, 2008. Thus, accepting, as we must, Plaintiff's allegations as true, it is plausible that Defendant Crews unlawfully seized Plaintiff by initiating a *Terry* stop of Plaintiff's vehicle without an articulable suspicion to justify the intrusion. *See United States v. Sokolow,* 490 U.S. at 7; *see also Wren v. United States*, 517 U.S. at 809–10. Therefore, we recommend that Defendants' Motion be **DENIED** as to this claim.

### b. Excessive Force

It is clear that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (alteration in original). This standard requires that the amount of force used

by an officer to be "objectively reasonable in light of the facts and circumstances confronting the officer." *Id.* at 397. Moreover, courts should also take into account the need for police officers to "make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving . . . without regard to their underlying intent or motivation." *Id.* at 396–97. This inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). Relevant factors include, *inter alia*, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).

### *i. Pepper Spray*

Plaintiff alleges that after being told to leave the area by Defendant Crews, and while waiting for him to move his police cruiser, he attempted to switch seats with his passenger. While walking around the vehicle Plaintiff reached into his pocket to grab a cigarette, at which point Defendant Crews drew his service revolver and ordered Plaintiff and passenger to lay on the ground. 2nd Am. Compl. at ¶¶ 15, 20–23, & 25. As discussed *supra*, we have already determined for purposes of this motion that Plaintiff had already been seized by Defendant Crews. *See supra* Part II.D(1)(a).

Additionally, we are not prepared to say as a matter of law that Plaintiff's refusal to obey Defendant Crews's orders indicated that criminality was afoot, or that by reaching into his pocket to retrieve a cigarette a reasonable officer in Defendant Crews's position would have felt threatened. Rather, it remains plausible that Defendant Crews's decision to use pepper spray was not reasonable under the circumstances, particularly in light of Plaintiff's claims that his movements were innocuous and there was no indication that any criminality was afoot. *See Graham v. Connor*, 490

U.S. at 396. Therefore, we recommend that Defendants' Motion be **DENIED** as to Plaintiff's excessive force/pepper spray claim.

### ii. Handcuffing

Plaintiff next claims that after being taken to the Village of Phoenix Police Station, and prior to being arraigned, he "was inhumanely handcuffed and shackled" to a bench "for the better part of eight hours" by Defendant Crews. 2nd Am. Compl. at ¶ 38. The "Fourth Amendment governs claims for use of excessive force by police that arise prior to arraignment."[4] *Caidor v. M&T Bank*, 2006 WL 839547, at *6 (N.D.N.Y. Mar. 27, 2006) (citation omitted). Like other Fourth Amendment excessive force claims, in order to state an excessive force claim based on the use of overly tight handcuffs, a Plaintiff must establish that the use of the handcuffs was objectively unreasonable under the circumstances. *Id.* (citation omitted). Whether the use of handcuffs was objectively reasonable "is dependent on whether the handcuffs were unreasonably tight, whether the arrestee's pleas to that effect were ignored, and the degree of injury to the arrestee's wrists." *Fifield v. Barrancotta,* 545 F. Supp. 2d 307, 311 (W.D.N.Y. 2008) (*citing Esmont v. City of New York,* 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005)).

Here, Plaintiff does not claim that he sustained any pain, discomfort, or injury as a result of being handcuffed. Plaintiff does not allege that he requested medical attention or ever complained the cuffs were too tight; let alone that any such requests were ever ignored by any of the Defendants. In fact, according to Plaintiff, Chief Rodney Carr loosened Plaintiff's cuffs without being asked or prompted by Plaintiff. 2nd Am. Compl. at ¶ 42. Therefore, Plaintiff has failed to state sufficient facts from which it could plausibly be concluded that the use of handcuffs in this case was

---

[4] According to Plaintiff, he was taken from the scene of the arrest to the Phoenix Police Station, and after his arraignment he was "remanded to the Oswego County Correctional Facility, where he remained until 2/3/09." *See* 2nd Am. Compl. at ¶¶ 38 & 43.

objectively unreasonable.  *See Lynch v. City of Mt. Vernon,* 567 F. Supp. 2d 459, 468 (S.D.N.Y.

2008) (citing cases for the proposition that "tight handcuffing does not constitute excessive force

unless it causes some injury beyond temporary discomfort"); *Caidor v. M&T Bank,* 2006 WL

839547, at *6 (dismissing Fourth Amendment excessive force/handcuffing claim where plaintiff

failed to plead any pain, discomfort, or injury); *Bender v. City of New York*, 2011 WL 4344203, at

*6 (S.D.N.Y. Sept. 14, 2011) (dismissing Fourth Amendment claim on motion to dismiss where

plaintiff's only alleged injury from being handcuffed for fourteen hours was a subsequent feeling

of discomfort for six hours); *Dzwonczyk v. Syracuse City Police Dep't*, 710 F. Supp. 2d 248, 263

(N.D.N.Y. 2008) (dismissing Fourth Amendment excessive force claim where Plaintiff failed to

allege that he sustained an injury or that "he communicated his pain to the officers").

Therefore, we recommend that Defendants' Motion be **GRANTED** with regards to

Plaintiff's excessive force/handcuffing claim against Defendant Crews.

### c.  False Arrest

A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New

York law.  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted).[5]  Under

New York law, to prevail on a false arrest claim, a plaintiff must show (1) the defendant intended

to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent

to the confinement, and (4) the confinement was not otherwise privileged.  *Broughton v. State*, 37

N.Y.2d 451, 456 (N.Y. Ct. App. 1975).  The quintessential justification, or defense, to false arrest

---

[5] The terms false arrest and false imprisonment are always stated in tandem, yet they are not distinct causes of action but rather, false arrest is only a species of false imprisonment.  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  Because they are corollaries of each other, the nomenclature can be, and often are, employed interchangeably.  Nonetheless this species of action is rather distinct from another common law cause of action, malicious prosecution, which is often concurrently invoked in these types of lawsuits.  *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (N.Y. Ct. App. 1975).

is the presence of probable cause.  *Weyant v. Okst*, 101 F.3d at 852 (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (noting that the existence of probable cause "is a complete defense to an action for false arrest")).  Essentially, the presence of probable cause proclaims that the arrest and confinement were privileged.  In order for probable cause to exist for an arrest, the arresting officers must

> have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. [citations omitted] . . . [Therefore] [a] district court must look to the 'totality of the circumstances.' [citation omitted].  In looking to the totality of the circumstances, courts must be aware that 'probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts– not ready, or even usefully, reduced to a neat set of legal rules.'

*Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (citations omitted).

In essence, probable cause is determined by the facts available to the officers at the time of the arrest and immediately before.  *Id.*; *see also Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003).  Furthermore, "the probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *Maliha v. Faluotico*, 286 F. App'x. 742, 744 (2d Cir. 2008) (noting that probable cause is an objective test).

Plaintiff's version of events sufficiently establishes that Defendant Crews intended to confine Plaintiff, that Plaintiff was aware he had been confined, and that the confinement was not consensual.  Moreover, it is plausible that Defendant Crews lacked probable cause to arrest Plaintiff, and therefore, that the arrest was not privileged.  According to Plaintiff's version of events, Defendant Crews's decision to arrest Plaintiff was based on the fact that Plaintiff had reached into his pocket, then refused to obey Defendant Crews's order to get down on the ground, and, after being pepper sprayed, fled the scene.  While it is true that "deliberately furtive actions and flight at

the approach of strangers or law officers are strong indicia of mens rea," they are merely factors to be considered in the overall equation, and should be considered along with whether or not the arresting officer had "specific knowledge . . . relating the suspect to the evidence of crime." *Sibron v. New York*, 392 U.S. 40, 66-67 (1968). Here, not only is it unclear whether or not Plaintiff's act of reaching into his pocket was deliberately furtive, there also does not appear to be any other evidence that Plaintiff was otherwise engaged in some other criminal activity at the time Defendant Crews ordered him to lay down on the ground. Therefore, we cannot say as a matter of law that such facts, even when considered together, constituted probable cause.

Likewise, we are unpersuaded by Defendants' argument that Plaintiff's refusal to obey Officer Crews's order to lie on the ground constituted probable cause to arrest Plaintiff for obstructing governmental administration. Defs.' Mem. of Law at pp. 10–13. "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act." N.Y. PENAL LAW § 195.05. Here, it is not clear that Defendant Crews's order constituted an "official function" because, as noted above it is not clear that he was justified in issuing such an order in the first place. *See Jackson v. City of New York*, 2013 WL 1621994, at *6 (E.D.N.Y. Apr. 16, 2013) (explaining that disobeying an order from a police officer constitutes probable cause in circumstances where "the relevant unheeded police order was justified by a separate act . . . [or] where the police has probable cause to issue the respective disobeyed orders in the first place," and concluding that "[p]laintiffs failure to comply with an (unjustified) order to exit her vehicle cannot, without more, create the predicate probable cause to justify her arrest for obstruction of governmental administration"). Therefore, we

recommend that Defendants' Motion be **DENIED** as to this claim.

### d. Unlawful Search

"Under the Constitution, warrantless searches are per se unreasonable, unless they fall within one of a limited number of exceptions." *Evans v. Solomon,* 681 F. Supp. 2d 233, 246 (E.D.N.Y. 2010) (citing *Thompson v. Louisiana,* 469 U.S. 17, 19–20 (1985) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967))). "Exceptions to the per se rule exist because 'the ultimate touchstone of the Fourth Amendment' is the reasonableness of the search or seizure at issue." *Evans v. Soloman,* 681 F. Supp. 2d at 246 (quoting *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403 (2006)). One such exception is the search incident to arrest, in which "a police officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person and the area within his immediate control." *Davis v. United States*, __ U.S. __, 131 S. Ct. 2419, 2424 (2011) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)) (internal quotation marks omitted).

Here, Plaintiff alleges that after his brief flight from Defendant Crews, he returned to his vehicle and laid down beside it, and that "moments after laying next to the vehicle . . . State Police officers pulled into the parking lot . . . [and] conduct[ed] an illegal search of plaintiff." 2nd Am. Compl. at ¶¶ 30–36 & 73. Plaintiff claims that the search was "based on information provided by [Defendant Crews], notifying the State Police that the Plaintiff had been placed under arrest." Pl.'s Opp'n at p. 7. Thus, by Plaintiff's own admission Defendant Crews did not personally search Plaintiff, and therefore, cannot maintain against Defendant Crews because he has failed to allege that Defendant Crews was personally involved in the search. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (holding that the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (citations omitted). Moreover, it cannot be gainsaid that the State Troopers illegally searched Plaintiff because Defendant Crews's statement

to them would have given them sufficient reason to believe that a crime had occurred and therefore probable cause to arrest Plaintiff. Likewise, Plaintiff cannot claim that Defendant Crews, a member of a municipal police department, had any authority whatsoever over the State Troopers who conducted the search.

Therefore, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's illegal search claim against Defendant Crews.

### 2. Fourteenth Amendment

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Second Circuit has found that claims for the abuse of criminal process and malicious prosecution implicate the procedural due process protections of the Fourteenth Amendment. *See Cook v. Sheldon*, 41 F.3d 73, 79–80 (2d Cir. 1994). Likewise, the Supreme Court has noted that the right to access the courts is grounded in the due process and equal protection clauses of the Fourteenth Amendment. *See Murray v. Giarratano,* 492 U.S. 1, 11 n. 6 (1989). Here, Plaintiff alleges that Defendant Crews and Chief Carr abused the criminal process, and maliciously prosecuted him. And, that Defendants Stafford and County of Oswego hindered his ability to access the courts by providing him with inadequate legal materials and limiting his access to the law library. *See generally* 2nd Am. Compl.

### a. Abuse of Criminal Process

To state an abuse of process claim, a plaintiff must assert that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is

outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d at 80.

Here, Plaintiff fails to identify what, if any, collateral objective Defendants may have been attempting to obtain by filing legal process against him. Therefore, Plaintiff has failed to state a cause of action for abuse of legal process. *See Devarnne v. City of Schenectay* [sic], 2011 WL 219722, at *3 (N.D.N.Y. Jan. 21, 2011). Therefore, we recommend that Defendants' Motion be **GRANTED** as to this claim.

### b. Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York,* 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Id.* at 161. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Id.* at 161–62 (quoting *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003)).

In the instant case, Plaintiff alleges that Defendants Crews and Carr initiated malicious prosecution against Plaintiff. *See* 2nd Am. Compl. at ¶¶ 67 & 77. However, Plaintiff cannot make out a plausible malicious prosecution claim because his criminal convictions were not favorably terminated. According to the New York Court of Appeals

> [a] criminal defendant has not obtained a favorable termination of a criminal
> proceeding where the outcome is inconsistent with the innocence of the accused.
> While a plaintiff need not prove actual innocence in order to satisfy the favorable

termination prong of a malicious prosecution action, the absence of a conviction is not itself a favorable termination.

*Martinez v. City of Schenectady*, 97 N.Y.2d 78, 84 (N.Y. Ct. App. 2001) (citation omitted).

Here, Plaintiff's criminal convictions were overturned because the evidence was tainted by an unlawful search and seizure, and/or the chain of custody over the evidence could not be established. *See People v. Layou*, 897 N.Y.S.2d 325 (App. Div., 4th Dep't 2010). Such a holding does not constitute a "favorable termination" for purposes of a malicious prosecution claim. *See Martinez v. City of Schenectady*, 97 N.Y.2d. at 85 (plaintiff had not secured a favorable termination for purposes of stating a malicious prosecution claim where plaintiff's felony conviction was reversed because "the evidence that formed the basis for her conviction was obtained pursuant to a faulty search warrant."). Therefore, we recommend Defendants' Motion be **GRANTED** as to Plaintiff's malicious prosecution claim.

### c. Access to Courts

Plaintiff claims he was given a total of only two and a half hours with a Gilbert's Law Book and Blacks Law Dictionary to prepare his *pro se* defense to felony and misdemeanor charges. As a result, he misunderstood his burden of proof and was accordingly unable to successfully mount a defense. 2nd Am. Compl. at ¶¶ 56 & 58. Defendants argue that Plaintiff failed to allege that he suffered harm or prejudice as a result of Defendants' alleged acts and that Plaintiff's right to access the court was provided for because he had access to a court appointed attorney. Defs.' Mem. of Law at pp. 18–22. We disagree, and therefore, recommend that Defendants's Motion be **DENIED.**

Prisoners, including pretrial detainees, "have a constitutional right of access to the courts." *Bounds v. Smith,* 430 U.S. 817, 821 (1977); *accord Lewis v. Casey,* 518 U.S. 343, 350 (1996). This right is grounded in the constitutional guarantees of equal protection and due process. *See, e.g., Murray v. Giarratano,* 492 U.S. at 11 n. 6. This right "assures that prisoners, including pretrial

detainees, have the tools they need in order to defend against criminal charges, attack their convictions and sentences (directly or collaterally), and bring civil rights claims challenging the conditions of their confinement." *Bourdon v. Loughren*, 386 F.3d 88, 89 n. 1, & 93 n. 8 (2d Cir. 2004) (citing *Lewis v. Casey*, 518 U.S. at 350–55, & *Bounds v. Smith,* 430 U.S. at 821–28). "To establish a violation, the inmate . . . must . . . demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at pp. 92–93 (internal quotation marks omitted) (citing *Lewis v. Casey*, 518 U.S. at 351).

Here, Plaintiff alleges that Defendant Stafford received a letter from the State Court informing him of Plaintiff's *pro se* status and directing him to provide Plaintiff with access to the law library. Nonetheless, Defendant Stafford limited Plaintiff's access to the law library to a total of two and a half hours and provided him with only two law books to prepare his defense. Pl.'s Opp'n, App. at p. 16; 2nd Am. Compl. at ¶¶ 55 & 56. Although admittedly thin, we find Plaintiff's claim that his ability to prepare a defense was hampered by Defendant Stafford's actions is plausible. And, although we make no assertion as to Plaintiff's ability to prove that his ability to mount a non- frivolous defense was actually "hampered," given the stage of the proceeding and the liberality with which we are instructed to interpret *pro se* pleadings, we believe that here, Plaintiff is entitled to the benefit of the doubt.

Moreover, we cannot conclude, as Defendants urge, that the availability of a court appointed attorney sufficiently satisfies the requirement that a pre-trial detainee be provided adequate access to the courts where that individual has elected to exercise his Sixth Amendment right to proceed *pro se* at trial. We are mindful that the Supreme Court has instructed that there is no "abstract, freestanding right to a law library or legal assistance," *Lewis v. Casey,* 518 U.S. at 351, and that, "'the provision of counsel can be a means of accessing the courts' that satisfies a state's

constitutional obligation to provide pretrial detainees with access to the courts." *Bourdon v. Loughren,* 386 F.3d at 93 (quoting *Benjamin v. Fraser,* 264 F.3d 175, 186 (2d Cir. 2001)). However, we must be mindful of the fact that in the instant case, Plaintiff is not alleging that the state or his appointed counsel violated his rights. Rather, he claims that Defendant Stafford's decision to limit his access to legal resources created a conflict between his right to proceed *pro se* and his right to access the courts.

Unfortunately, the precise ramifications of the intersection between the right to access the courts under the Fourteenth Amendment and the right to proceed to trial *pro se* as provided under the Sixth Amendment is an issue which has been discussed, but not decided by either the Second Circuit or the Supreme Court. *See Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (noting, but not resolving a circuit split over "whether . . . [the] Sixth Amendment right to self-representation, implies a right of the *pro se* defendant to have access to a law library") (internal citations omitted); *see also Bourdon v. Loughren*, 386 F.3d at 94 n. 9 ("We express no view as to whether the appointment of counsel could adequately protect the right of access to the courts of a defendant who has . . . exercised his Sixth Amendment right to waive counsel and conduct his own defense."). Therefore, in the absence of any clear guidance we are not prepared to rule as a matter of law that access to a court appointed attorney is sufficient in the instant case. Accordingly, we recommend that Defendants' Motion be **DENIED** as to this claim.

### 3. Monell Claim

Next, Plaintiff alleges that all "Defendant[s] . . . by their conduct toward and about plaintiff intentionally, willfully and without justification, adhered to an unconstitutional custom, practice or policy, depriv[ing] Plaintiff of the rights, privileges and immunities guaranteed to him by the First, Fourth, Sixth, Eighth, and Fourteenth Amendments." 2nd Am. Compl. at ¶ 81. Plaintiff also claims

that Defendant County of Oswego "intentionally disregared[ed] the criminal acts and constitutional violations committed against the Plaintiff by defendant Douglas K. Crews." Pl.'s Opp'n at p. 10.

A municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978). To establish a municipal policy or custom, a plaintiff must allege:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Prowisor v. Bon–Ton, Inc.,* 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006) (citation omitted).

Nonetheless, a municipality and its supervisory officials may not be held liable under § 1983 based on the theory of *respondeat superior. See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. at 691. Moreover, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citations omitted); *see also City of Canton v. Harris,* 489 U.S. 378, 387 (1989). Still, a policy may be inferred from circumstantial proof that the municipality displayed a deliberate indifference to the constitutional rights of an individual within its jurisdiction by failing to train its employees. *See Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d at 123. However, evidence of an unconstitutional action by a police officer will not, on its own, be enough to prove that the training program the officer received was inadequate, let alone prove that any inadequacy was a result of a city's deliberate indifference. *Carnegie v. Miller*, 811 F. Supp. 907, 911 (S.D.N.Y. 1993). "Deliberate indifference means that the city made a 'deliberate choice'

not to train its employees from among various alternatives." *Pawlicki v. City of Ithaca*, 1996 WL 705785, at *2 (N.D.N.Y. Dec. 5, 1996) (citing *Canton v. Harris*, 489 U.S. at 389). "Such deliberate indifference may be inferred from a failure to supervise: from proof of repeated complaints of constitutional violations that 'are followed by no meaningful attempt on the part of the municipality to investigate or forestall further incidents.'" *Velasquez v. City of New York*, 960 F. Supp. 776, 783 (S.D.N.Y. 1997) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). However, liability will not attach unless the training inadequacy is closely related to the ultimate injury. *Pawlicki v. City of Ithaca*, 1996 WL 705785, at *2.

Here Plaintiff has not plausibly stated a *Monell* claim. Plaintiff does not identify the specific policy or custom which he claims Defendants created or enforced, nor does he allege sufficient facts to show a failure to train on behalf of any Defendant. Moreover, Plaintiff's claims that the County of Oswego knew of and disregarded the allegedly unconstitutional acts committed by Defendant Crews during the course of a single arrest does not, on its own, plausibly indicate a failure to train. Nor has Plaintiff pointed to any other example from which it could plausibly be concluded that such incidences are either widespread or persistent throughout the County of Oswego. Therefore, we recommend that Defendants' Motion be **GRANTED** as to this claim.

### E. §§ 1981(a) & 1985(3) Claims

Section 1981 provides, in pertinent part:

> All persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to the like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Unlike § 1983, a § 1981 violation is not based upon underlying constitutional violations, "but rather

provides an alternative statutory remedy for violations that concern an activity enumerated in the statute." *Olivera v. Town of Woodbury*, 281 F. Supp. 2d 674, 684 (S.D.N.Y. 2003). To state a claim under § 1981, a plaintiff must allege that "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Hill v. Philip Morris USA*, 2004 WL 1065548, at *4 (S.D.N.Y. May 11, 2004) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). Plaintiff must therefore allege facts from which a purposeful discriminatory intent can be inferred. *Albert v. Carovano*, 851 F.2d 561, 571-72 (2d Cir. 1988) ("Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory.") (quoted in *Hill v. Philip Morris USA*, 2004 WL 1065548, at *4); *see also Gen. Bldg. Contractors Ass'n. v. Pennsylvania United Eng'rs & Constructors, Inc.*, 458 U.S. 375, 391 (1982) (noting that like Equal Protection claims, § 1981 "can be violated only by purposeful discrimination").

Similar to § 1981, 42 U.S.C. § 1985(3) states, in pertinent part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . , if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with (3) "an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and

-23-

(5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted). "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dep't of Corr. Servs.*, 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (citations omitted). A claim of conspiracy under this subsection must include more than conclusory allegations. *Dwares v. City of New York*, 985 F.2d 94, 99-100 (2d Cir. 1993). Thus, to recover damages under § 1985, Plaintiff must allege facts from which purposeful discriminatory intent can be inferred. *Gen. Bldg. Contractors Ass'n. v. Pennsylvania United Eng'rs & Constructors, Inc.*, 458 U.S. at 390-91; *see also Hill v. Philip Morris USA*, 2004 WL 1065548, at *4 (for the proposition that in order to state a claim under § 1985(3), a plaintiff "must allege, *inter alia*, that the defendants who allegedly conspired sought, with *discriminatory intent*, to deprive the plaintiff of a right covered by the Constitution or other laws") (quoting *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990)) (emphasis in original).

Here, Plaintiff has failed to state a cause of action under either statute. He fails to allege that he is a minority under § 1981, or the type of race or class based conspiracy to discriminate as contemplated under § 1985 existed. Plaintiff claims that Defendants discriminated against him because he was poor, a convicted felon, and a drug addict. Pl.'s Reply at p. 10. Even if true, such discrimination is neither race-based nor targeted at any class protected under the Constitution. *See Martin v. New York State Dep't of Corr. Servs.*, 115 F. Supp. 2d at 316. Moreover, Plaintiff fails to allege any facts or circumstances from which it could plausibly be concluded that any two Defendants conspired for any purpose, let alone to deprive Plaintiff of his constitutional rights. Therefore, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's §§ 1981(a) & 1985(3) claims.

-24-

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Judgment on the Pleadings (Dkt. No. 53) be **GRANTED** in part and **DENIED** in part as follows:

1. **GRANTED** as to Plaintiff's (i) intentional infliction of emotional distress, unlawful search, and excessive force/handcuffing claim against Defendant Crews, (ii) abuse of process claim against Defendants Crews and the Estate of Rodney Carr, (iii) *Monell* claim against Defendant County of Oswego, and (iv) § 1981(a) and § 1985(3) claims against all Defendants, and that Defendants the Estate of Rodney Carr and County of Oswego be **DISMISSED** from this action;

2. **DENIED** as to Plaintiff's (i) excessive force/pepper spray claim against Defendant Crews, (ii) access to courts claim against Defendant Stafford, and (iii) unlawful search, seizure, and arrest claims against Defendant Crews; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).


Date:   September 12, 2013
       Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge

-25-