**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL JAMES LAYOU,

                      Plaintiff,

    - v -                                          Civ. No. 9:11-CV-114
                                                               (LEK/RFT)

DOUGLAS K. CREWS, *Patrolman, Village of Phoenix Police Department*; MICHAEL STAFFORD, *Administrator, Oswego County Correctional Facility*;

                      Defendants.

**APPEARANCES:**                               **OF COUNSEL:**

MICHAEL JAMES LAYOU
*Pro se* Plaintiff
3110 Hope Place
Baldswinsville, NY 13027

OFFICE OF FRANK W. MILLER         BRYAN GEORGIADY, ESQ.
6575 Kirkville Road
East Syracuse, NY 13057

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

## I. BACKGROUND

*Pro se* Plaintiff Michael James Layou, while incarcerated at Gowanda Correctional Facility, commenced this civil rights action, pursuant to 42 U.S.C. §§ 1981(a), 1983, and 1985(a), alleging various state and federal civil rights violations.

*See generally* Dkt. No. 50, Second Am. Compl. On September 30, 2013, the Honorable Lawrence E. Kahn, Senior United States District Judge, dismissed several state and federal claims and Defendants from this action; Plaintiff's remaining claims are as follows: 1) unlawful seizure, 2) excessive force, 3) false arrest, and 4) lack of access to the courts.[1] Dkt. No. 64. Presently before the Court is Defendants' Motion for Summary Judgment seeking to dismiss Plaintiff's Complaint in its entirety. Dkt. No. 92. On March 17, 2015, Plaintiff filed a Response in Opposition. Dkt. No. 101. On March 30, 2015, Defendants filed a Reply thereto. Dkt. No. 105.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment

---

[1] As a threshold issue, we note that *Heck v. Humphrey,* 512 U.S. 477 (1994), does not bar this Court from reviewing Plaintiff's claims as Plaintiff's criminal convictions were overturned because, according to the Appellate Division, Fourth Department, the evidence should have been suppressed as a result of the unlawful seizure, and/or the lack of chain of custody over the evidence. Dkt. No. 101-1, Ex. A, App. Div. Mem. & Order, dated Mar. 19, 2010.

on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all

ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B. Material Facts

### 1. *Undisputed Facts*

Defendant Douglas K. Crews was employed by the Village of Phoenix Police Department as a Police Officer. Dkt. No. 92-4, Douglas K. Crews Aff., dated Dec. 22,

2014, at ¶ 1. On February 1, 2008, around 3:20 a.m., the 911 dispatch center radioed a home burglary in progress. *Id.* at ¶ 5. Officer Crews was the first officer to arrive at the residence; the resident stated that two men had broken into his house and he last saw them running down the street toward the dead end. *Id.* at ¶ 8. Crews returned to his patrol vehicle to search the area for the perpetrators. *Id.* at ¶ 9. However, Defendant Crews did not see any pedestrians or cars in the area. *Id.* at ¶¶ 11-12. Eventually, Officer Crews turned onto Davis Street. *Id.* at ¶ 14. Officer Crews saw a vehicle drive down Davis Street and turn into an apartment complex parking lot at 56 Davis Street. *Id.* at ¶ 15. Crews recognized the apartment complex as he previously responded "to various calls from the apartment complex for both domestic disturbance situations and reports of drug use and transactions." *Id.*

On February 1, 2008, at approximately 3:30 a.m., Plaintiff, who was driving with a female passenger,[2] parked in the apartment complex parking lot, located at 56 Davis Street, Village of Phoenix; Plaintiff had planned on visiting a female friend that lived in the apartment complex. Dkt. No. 92-3, Bryan Georgiady, Esq., Decl., dated Dec. 22, 2014, Ex. A, Michael James Layou Dep., dated Sept. 22, 2014, at p. 65; Second Am. Compl. at ¶ 9.

Officer Crews activated his spotlight and pulled up behind the vehicle at a 90-

---

[2] The passenger is not a party to this action.

degree angle; this position would have prevented the other vehicle from getting out of its parking space. Crews Aff. at ¶¶ 17-18. Officer Crews approached the driver's side of the vehicle with his handheld flashlight to see if the occupants matched the description of the burglary suspects. Second Am. Compl. at ¶¶ 11 & 18. When Plaintiff saw Officer Crews approaching, he rolled down the window and asked Officer Crews, "what's going on, what's wrong?" Layou Dep. at p. 72; Crews Aff. at ¶ 21. Crews replied that he was in the area searching for two burglary suspects and immediately acknowledged that neither the Plaintiff nor the female passenger were the suspects. Second Am. Compl. at ¶ 13; Layou Dep. at p. 72. Officer Crews then stated it was their "lucky day" and directed them to "get the fuck out of there." Layou Dep. at p. 92; *see* Crews Aff. at ¶ 23. The facts thereafter are in dispute.

2. *Disputed Facts*

a. *Plaintiff's Account*

According to Plaintiff, after he was instructed to leave the area, Defendant Crews returned to his patrol car, but did not move it. Second Am. Compl. at ¶ 15; Layou Dep. at p. 98. While Plaintiff was waiting for Officer Crews to move his patrol car, he took a sip from his soda; the soda dropped to the floor of the vehicle and Plaintiff went to retrieve it. Layou Dep. at p. 100. Officer Crews then appeared at the driver's side window pointing his service revolver at Plaintiff's head and ordered him

to show his hands.  Second Am. Compl. at ¶¶ 16-17; Layou Dep. at p. 100.  Officer Crews then realized that Plaintiff was only holding a soda and headed back to his vehicle without saying a word.  Second Am. Compl. at ¶ 19; Layou Dep. at p. 101.

The female passenger told Plaintiff she wanted to leave the complex.  Layou Dep. at p. 103.  Plaintiff and the female passenger decided to switch seats.[3]  *Id.*  They both got out of the vehicle at the same time.  *Id.* at p. 110.  The female passenger walked behind the car and passed Officer Crews, who was looking inside of his patrol car.  *Id.* at p. 111.  At this point, Plaintiff was outside of the car but did not walk in any direction as he was still contemplating whether he should just head up to his female friend's apartment, or leave with the female passenger.  Layou Dep. at pp. 111-12.  As he was contemplating, Plaintiff reached into his inside coat pocket for a cigarette; Officer Crews looked at Plaintiff and starts screaming, "get on the ground, get on the ground!"  Layou Dep. at pp. 112 & 114.  The female passenger laid on the ground.  Plaintiff has his hands up, but refused to get on the ground.  *Id.* at pp. 113 & 118.  Defendant Crews started pointing and alternating his gun between Plaintiff and the female passenger.  *Id.* at p. 114.  Defendant Crews approached Plaintiff and pepper sprayed him.  Second Am. Compl. at ¶ 29.  Plaintiff felt his face burning while running toward the far side of the apartment building.  *Id.* at ¶¶ 30-31; Crews Aff. at

---

[3] The female passenger is the owner of the vehicle.

¶ 34. Officer Crews yelled to Plaintiff that he was under arrest. Dkt. No. 104, Pl.'s Mem. of Law, at p. 5. Plaintiff then ran back toward the parking lot and laid down next to the vehicle he was driving. Layou Dep. at p. 42. The state police then picked him up and brought him to the Phoenix Police Station. *Id.*; Second Am. Compl. at ¶ 37.

### b. *Defendant Crews's Account*

As Officer Crews was beginning to step away from the vehicle — right after he advised Plaintiff he was free to leave the area — he noticed an object that appeared to be a digital scale around Plaintiff's feet. Crews Aff. at ¶ 24. Officer Crews then saw Plaintiff reach down and put his hands beneath his seat.[4] *Id.* Officer Crews repeatedly instructed Plaintiff to make his hands visible as he wanted to make sure Plaintiff was not reaching for a weapon underneath his seat; but, Plaintiff did not comply. *Id.* at ¶ 25. Officer Crews then pointed his gun at Plaintiff and again ordered him to show his hands. *Id.* at ¶ 28. Plaintiff finally withdrew his hands from beneath the seat, but quickly thrust his right hand into his coat pocket, pushed the car door open, quickly got out of the car, stood up with his back towards Officer Crews, and then turned around and faced Officer Crews with his right hand still in his coat pocket.

---

[4] Officer Crews "thought that was suspicions [] because digital scales are commonly associated with drug activity and [Plaintiff] seemed to be making an effort to hide it." Dkt. No. 92-4, Douglas K. Crews Aff., dated Dec. 22, 2014, at ¶ 24.

*Id.* at ¶¶ 30-32. Officer Crews heard the passenger repeatedly yelling that Plaintiff did not have a gun, but Plaintiff was still refusing to take his hand out of his coat pocket. *Id.* at ¶¶ 33-34. Officer Crews attempted to pepper spray Plaintiff in the face. *Id.* at ¶ 34; Second Am. Compl. at ¶ 29. At that point, Plaintiff ran towards the far side of the apartment building. Crews Aff. at ¶ 34. Officer Crews chased him. *Id.* at ¶ 37.

They ended up back at the parking lot. Plaintiff jumped into the driver seat, where the passenger was now seated. *Id.* at ¶¶ 39-40. Officer Crews grabbed Plaintiff's right hand and pulled it out from his coat pocket. *Id.* at ¶ 41. In Plaintiff's right hand, Officer Crews saw a clear plastic bag containing white power, which the Plaintiff attempted to shove into the passenger's lap. *Id.* Officer Crews pepper sprayed him in an attempt to get him out of the vehicle, but Plaintiff refused to get out of the vehicle; Officer Crews then redrew his gun. *Id.* at ¶ 42. Eventually, Plaintiff relented, got out of the vehicle, and placed the bag containing white powder down. *Id.* at ¶ 43. Immediately thereafter, two state troopers arrived and took Plaintiff and the passenger into custody, and drove them to the police station. *Id.* at ¶ 44.

3. *Subsequent Events*

Plaintiff was arraigned in Schroeppel Town Court on February 1, 2008. Layou Dep. at p. 171. There, the town court justice assigned Plaintiff a public defender. *Id.* On February 1, 2008, after plaintiff was arraigned, he was sent to Oswego County

Correctional Facility ("Oswego"), where he remained until February 3, 2009. *Id.* at pp. 172-73.

Defendant Michael Stafford is the Facility Administrator for the Oswego County Correctional Facility, and has overall supervisory authority over all the Facility's administrative functions. Dkt. No. 92-5, Michael Stafford Aff., dated Dec. 22, 2014, at ¶¶ 1 & 3.

During Plaintiff's 2008-2009 confinement at the Facility, the Facility did not have a law library. Dkt. No. 92-6, Lt. Michael Benjamin Aff., dated Dec. 22, 2014, at ¶ 5. Instead, the Facility relied on the County's Law Library for legal research materials. *Id.* at ¶ 13.

The procedure for requesting legal research material was outlined in the Inmate Informational Handbook. *Id.* at ¶ 6. The Handbook instructs detainees to obtain a "Request for Legal Reference Material" Form from their housing unit officer in order to request legal materials. Dkt. No. 92-5, Stafford Aff., Ex. B, Handbook Excerpt; Benjamin Aff. at ¶ 7. The Handbook was provided to all inmates. Plaintiff received the Handbook in 2008. Stafford Aff. at ¶ 17; Layou Dep. at p. 184.

Once per day, a correctional officer would collect all the request forms from all the housing units. Benjamin Aff. at ¶ 10. The Facility had a limit of one request form per day, with two items per request form. *Id.* at 8. The request forms were then

forwarded to the Oswego County Law Librarian. It would typically take a week[5] for inmates to receive legal materials that were physically located at Oswego County Law Library. *Id.* at ¶ 14. However, not all requested material had to be submitted to the Law Librarian as the Facility also kept packets of commonly requested materials. *Id.* at ¶ 15.

During Plaintiff's confinement at the Facility, he submitted several requests for specific case law, which he received. *See* Layou Dep. at pp. 190-93. On January 12 or 13, 2009, Plaintiff submitted a request for Gilbert's and Black's Law Dictionary, which was provided to him on January 21, 2009. *Id.* at p. 204. He was provided a total of two and half hours with these books, which was divided over three consecutive days. *Id.* at p. 205.

On January 7, 2009, Plaintiff and his assigned attorney appeared before the Oswego County Court Judge to discuss Plaintiff's *pro se* motion, in which he sought to represent himself at the January 26 criminal trial. Dkt. No. 92-3, Georgiady Decl., Ex. C, Tr., dated Jan. 7, 2009, at p. 2. Ultimately, the County Court Judge allowed Plaintiff to proceed *pro se* with the public defender as his legal advisor during the course of the trial. *See generally id.* at p. 25. The County Court January 14, 2009 letter to Defendant Stafford stated that:

---

[5] Some requests could be completed faster than others; it depended on the particular request and how specific the inmate described what he was looking for. Dkt. No. 92-6, Lt. Michael Benjamin Aff., dated Dec. 22, 2014, at ¶ 12.

> "Michael Layou's request to represent himself in [People v. Michael Layou] was recently approved by the Court. For that reason, Mr. Layou should be provided reasonable access to the jail's law library in order to prepare for his upcoming trial. The Court appreciates your assistance in this matter and hopes Mr. Layou is afforded sufficient opportunity to access the law library."

Dkt. No.101-7, Ex. G, Ex. H, Hafner Lt., dated Jan. 14, 2009.

Defendant Stafford received this letter sometime in January 2009. Stafford Aff. at ¶ 23.

During the course of the criminal trial, with the public defender's guidance, Plaintiff picked the jury, handled sidebars with the judge, made his opening statement, and questioned Officer Crews on the witness stand. Layou Dep. at pp. 215-16. Thereafter, the assigned public defender "pretty much took the front position and he did everything throughout the rest of the trial. [Plaintiff] didn't do anything more." *Id.* at p. 216.

### C. Access to the Courts

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Supreme Court has found that the right to access the courts is grounded in the due process and equal protection clauses of the Fourteenth

Amendment. *See Murray v. Giarratano,* 492 U.S. 1, 11 n.6 (1989). Prisoners, including pretrial detainees, "have a constitutional right of access to the courts." *Bounds v. Smith,* 430 U.S. 817, 821 (1977); *accord Lewis v. Casey,* 518 U.S. 343, 350 (1996). This right "assures that prisoners, including pretrial detainees, have the tools they need in order to defend against criminal charges, attack their convictions and sentences (directly or collaterally), and bring civil rights claims challenging the conditions of their confinement." *Bourdon v. Loughren*, 386 F.3d 88, 89 n.1 & 93 n.8 (2d Cir. 2004) (citing *Lewis v. Casey*, 518 U.S. at 350–55 & *Bounds v. Smith,* 430 U.S. at 821–28). Providing pretrial detainees with "adequate law libraries or adequate assistance from persons trained in law" are methods of ensuring that prisoners have access to the courts. *Bounds v. Smith,* 430 U.S. 817 at 828.

To demonstrate a claim for denial of access to the courts, the Plaintiff must demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. *See Lewis v. Casey*, 518 U.S. at 351; *Heisler v. Kralik*, 981 F. Supp. 830, 840 (S.D.N.Y. 1997) ("[P]laintiff must allege that the denial of access proximately caused some prejudice to a legal claim.") (citing to *Lewis v. Casey*, 518 U.S. 343) (further citations omitted).

Here, Plaintiff fails to demonstrate he suffered an actual injury when he was only provided with two and half hours with Gilbert's and Black's Law Dictionary.

According to the Plaintiff, he suffered an actual injury because he was unable to introduce "outrageous police conduct into the instructions at trial." Layou Dep. at p. 226. He argues that if he would have had greater access to legal materials from the County's Law Library he would have "learned more" about submitting this defense to the jury. However, it remains unclear how his inability to spend more time with these two particular legal books hindered Plaintiff's efforts to submit this charge to the jury. *See Heisler v. Kralik*, 981 F. Supp. at 840 (dismissing plaintiff's access to the courts claim for failing to explain how access to the law library would have changed the result of his criminal case). More significantly, Plaintiff at all times relevant to this claim had access to an attorney for legal assistance, even after electing to proceed *pro se*. *Bourdon v. Loughren*, 386 F.3d at 97 ("constitutionally acceptable access can be provided alternatively by 'adequate assistance from persons trained in the law'") (quoting *Bounds v. Smith,* 430 U.S. at 828). Thus, it cannot be said that Plaintiff did not have meaningful access to the courts. As a result, the Court recommends **granting** Defendants' Motion for Summary Judgment with respect to Plaintiff's access to courts claim.

### D. Fourth Amendment Claims

#### 1. *Unlawful Seizure*

Plaintiff contends that he was unlawfully stopped by Defendant Crews. Second Am. Compl. at ¶ 65. Plaintiff further argues that although Defendant Crews told him he was free to leave, he was not free to leave because Crews's patrol car remained parked behind the vehicle he had just parked. Layou Dep. at pp. 96-98. Defendants argue that Defendant Crews is entitled to qualified immunity.

Because the parties' accounts of the events after the Plaintiff was directed to leave the area are in dispute, the Court, at this juncture, is unable to recommend summary judgment based on qualified immunity. As a result, the Court recommends **denying** Defendants' Motion for Summary Judgment with respect to the unlawful seizure.

#### 2. *Excessive Force*

It is clear that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (alteration in original). This standard requires that the amount of force used by an officer to be "objectively reasonable in light of the facts and circumstances confronting the

officer." *Id.* at 397. Moreover, courts should also take into account the need for police officers to "make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving . . . without regard to their underlying intent or motivation." *Id.* at 396–97. This inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). Relevant factors include, *inter alia*, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner,* 471 U.S. 1, 8–9 (1985)).

Here, the events that led to Plaintiff being pepper sprayed by Defendant Crews are in dispute, thus, the excessive force claim is ill-suited for resolution on a motion for summary judgment. Specifically, in his deposition, Plaintiff claims that he had his hands in the air when Defendant Crews began to pepper spray him.[6] Layou Dep. at pp. 113 & 118. Defendant Crews on the other hand claims that Plaintiff continued to have his hand in his coat when he attempted to pepper spray Plaintiff. Thus, the Court recommends **denying** Defendants' Motion for Summary Judgment on this claim.

---

[6] The Court must treat sworn testimony as evidence when deciding a motion for summary judgment. As a result, Plaintiff's deposition is sufficient to controvert Defendants' declarations; and when testimony is in dispute, we are precluded from deciding the credibility of the parties. *See Scott v. Coughlin*, 344 F.3d 282, 289 (2d Cir. 2003).

### E. False Arrest

A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). Under New York law, to prevail on a false arrest claim, a plaintiff must show (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Broughton v. State*, 37 N.Y.2d 451, 456 (N.Y. Ct. App. 1975). The quintessential justification, or defense, to false arrest is the presence of probable cause. *Weyant v. Okst*, 101 F.3d at 852 (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (noting that the existence of probable cause "is a complete defense to an action for false arrest")). Essentially, the presence of probable cause proclaims that the arrest and confinement were privileged. In order for probable cause to exist for an arrest, the arresting officers must

> have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. [citations omitted] . . . [Therefore] [a] district court must look to the 'totality of the circumstances.' [citation omitted]. In looking to the totality of the circumstances, courts must be aware that 'probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts– not ready, or even usefully, reduced to a neat set of legal rules.'

*Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (citations omitted).

In essence, probable cause is determined by the facts available to the officers at the time of the arrest and immediately before. *Id.*; *see also Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003). "The probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *Zellner v. Summerlin,* 494 F.3d 344, 369 (2d Cir. 2007) ("Probable cause is to be assessed on an objective basis."); *Maliha v. Faluotico*, 286 F. App'x. 742, 744 (2d Cir. 2008) (noting that probable cause is an objective test). The question of whether or not probable cause existed may be determinable as a matter of law only if the pertinent events and the officer's knowledge are undisputed; a trial may be required if the facts are in dispute. *Weyant v. Okst*, 101 F. 3d at 852 (citing *Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir. 1994) for the proposition that the question of whether probable cause existed is properly present to the jury when the question is predominantly factual in nature). Lastly, a grand jury's indictment does not create a presumption of probable cause with respect to a false arrest claim. *Stukes v. City of New York,* 2015 WL 1246542, at *10 (E.D.N.Y. Mar. 17, 2015). The Second Circuit has explained that, "the New York Court of Appeals has expressly held that the presumption of probable cause arising from an indictment 'applies only in causes of action for malicious prosecution and is

totally misplaced when applied in false [arrest] actions.'" *Id.* at 10 (quoting *Savino v. City of New York,* 331 F.3d 63, 75 (2d Cir. 2003) (alteration in original) (further citations omitted)). In addition, a "conviction that has been reversed on appeal is no evidence of the existence of probable cause; to the contrary, 'evidence of a subsequent dismissal, acquittal or reversal on appeal would . . . be admissible to refute . . . justification.'" *Weyant v. Okst,* 101 F.3d at 852 (quoting *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)).

Here, the Court recommends denying Defendants' Motion for Summary Judgment with respect to Plaintiff's false arrest claim as the facts leading up to the arrest are also in dispute. As previously outlined, Plaintiff and Defendant provide two distinct accounts of what occurred prior to Plaintiff's arrest. Viewing the totality of the circumstances in a light favorable to the non-movant, Layou, there is a general issue for a jury to determine whether Crews had probable cause to arrest Layou. Thus, the Court recommends **denying** Defendants' Motion for Summary Judgment as to Plaintiff's false arrest claim.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 92) be **DENIED in part** as to Plaintiff's unlawful seizure, false arrest, and

excessive force claims against Defendant Crews and **GRANTED in part** as to Plaintiff's access to courts claim against Defendant Stafford; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: August 19, 2015
      Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge