UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL JAMES LAYOU,

                            Plaintiff,                  9:11-cv-00114 (BKS/DJS)

v.

DOUGLAS K. CREWS, Patrolman, Village of Phoenix
Police Department,

                            Defendant.
_____

**APPEARANCES:**

*For Plaintiff:*
Samantha C. Riggi, Esq.
Bottar Leone, PLLC
120 Madison Street
Syracuse, NY 13202

*For Defendant:*
Charles C. Spagnoli, Esq.
The Law Firm of Frank W. Miller
6575 Kirkville Road
East Syracuse, NY 13057

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

       Plaintiff Michael James Layou brings this action under 42 U.S.C. § 1983, alleging that Defendant Douglas K. Crews, a then patrolman of the Village of Phoenix Police Department, violated Plaintiff's Fourth Amendment rights by conducting an unreasonable stop and seizure, using excessive force, and carrying out a false arrest during events that unfolded on February 1, 2008. Presently before the Court are Plaintiff's and Defendant's respective motions in limine (Dkt. Nos. 180, 193) concerning various evidentiary matters. For the reasons discussed below,

Plaintiff's motion is granted in part and denied in part, and Defendant's motion is granted in part and denied in part.

## II.   DISCUSSION

### A.   Plaintiff's Motion in Limine

#### 1.   Plaintiff's Criminal History

Plaintiff seeks to preclude Defendant from adducing evidence of Plaintiff's criminal history, except for convictions related to this case. (Dkt. No. 193, at 1). Plaintiff was convicted of criminally negligent homicide in 1999, criminal possession of a controlled substance in the fifth degree in 1999, criminal possession of a controlled substance in the third degree in 2009, criminal possession of a controlled substance in the third degree in 2016, and criminal possession of a controlled substance in the fourth degree in 2016. (*Id.* at 4). All of these crimes are felonies punishable in excess of one year. *See* N.Y. Penal Law §§ 70.00(3), 125.10, 220.06, 220.09, 220.16.

Rule 609(1)(A) of the Federal Rules of Evidence provides that, "subject to Rule 403," evidence of a prior conviction "must be admitted" to impeach a witness in a civil case where the conviction was "for a crime that . . . was punishable . . . by imprisonment for more than one year." Evidence of a prior felony conviction, therefore, must generally be admitted unless "its probative value is substantially outweighed by" its prejudicial effect. *See* Fed. R. Evid. 403. But if the witness's conviction or release from confinement for it is more than 10 years old, the rule is reversed: to be admitted, the conviction's "probative value, supported by specific facts and circumstances, [must] substantially outweigh[] its prejudicial effect." Fed. R. Evid. 609(b)(1).

There is no dispute that Plaintiff's 1999 convictions for criminally negligent homicide and criminal possession of a controlled substance in the fifth degree must be tested under the standard imposed by Rule 609(b). As discussed during the pretrial conference, these crimes'

probative value on the issue of Plaintiff's truthfulness is marginal, whereas the potential for causing unfair prejudice to Plaintiff is significant. The Court finds that the probative value of the convictions does not substantially outweigh the prejudicial effect, and the two convictions are inadmissible under Rule 609(b).

Plaintiff's convictions for drug possession in 2009 and 2016 must be analyzed under Rule 609(a)(1), as they are less than 10 years old. "In balancing probative value against prejudicial effect under this rule, courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997). With regard to the first factor, "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," but "all Rule 609(a)(1) felonies are not equally probative of credibility." *United States v. Estrada*, 430 F.3d 606, 617-18 (2d Cir. 2005). The second factor reflects the fact that the "probative value of a conviction decreases as its age increases." *Williams v. Raimo*, No. 9:10-cv-245, 2012 WL 4911722, at *4, 2012 U.S. Dist. LEXIS 147761, at *12 (N.D.N.Y. Oct. 15, 2012) (quoting 4 Weinstein's Federal Evidence, § 609.05[3][d], at 609-41 (2d ed. 2010)). Under the third factor, courts consider the attendant risk of improper propensity inferences. "The less similar the pending case to the prior conviction, the less prejudicial its admission is." *Stephen v. Hanley*, No. 03-cv-6226, 2009 WL 1471180, *5, 2009 U.S. Dist. LEXIS 43334, at *13 (E.D.N.Y. May 21, 2009).

The first factor (impeachment value) and the fourth factor (importance of the witness's credibility) favor admissibility here. Plaintiff plans to offer his own account of the February 1, 2008 events, and the jury will have to assess his credibility against that of Defendant, who will

3

likely testify to a different version. As such, Plaintiff's character for truthfulness is important, and the existence of prior drug convictions is probative—even if only slightly—on that point. *See id.* ("[A] drug conviction bears on [a witness's] credibility since it removes any misperceptions that he is a model citizen."). Under the second factor (remoteness of the conviction), the crimes are not so remote in time as to extinguish their probative value. The third factor (similarity of the crimes), however, is indeterminate. To some extent, the 2009 and 2016 drug possession convictions bear some similarity to the conduct at issue in this case, as the February 1, 2008 events led to Plaintiff's conviction for drug possession.[1] But this is a § 1983 action, and, unlike the related criminal proceeding, drug possession is not the core issue of the case—indeed, Plaintiff could prevail on his constitutional claims of unreasonable seizure, excessive force, and false arrest even if Plaintiff was in possession of drugs at the time of the events. Further, in light of Plaintiff's intent to introduce evidence of his drug addiction, the introduction of the drug possession convictions will not be unduly prejudicial. Accordingly, the Court finds that the probative value of the drug possession convictions from 2009 and 2016 is not substantially outweighed by the risk of prejudice to Defendant. These convictions are admissible for impeachment purposes.

### 2. Gina Vigliotti's Criminal History

Plaintiff moves to exclude the past criminal convictions of witness Gina Vigliotti, who was convicted of criminal possession of a controlled substance in the seventh degree in 2008 (a misdemeanor) and driving while impaired in 2016 (a traffic infraction). (Dkt. No. 193, at 5); *see* N.Y. Penal Law §§ 70.15(1), 220.03; N.Y. Veh. & Traf. Law §§ 1192(1), 1193(1). Because these convictions are not punishable by imprisonment for more than one year, they are not admissible

---

[1] That conviction was subsequently reversed. *See infra* Part II.B.1.

4

under Rule 609(a)(1). Moreover, neither conviction requires proof of "a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Therefore, Defendant may not impeach Ms. Vigliotti's credibility through her past convictions under Rule 609.

In a letter to the Court, filed on September 15, 2017, Defendant nevertheless argues that Ms. Vigliotti's drug possession conviction goes to her bias against Defendant because she was convicted as a result of "drugs (Hydrocodone) she revealed at the police station" on the night of the February 1, 2008 arrest. (Dkt. No. 220, at 2). Defendant intends to bring in the conviction "to show she has a reasonable motive to wish Defendant harm specifically, and thus to testify adversely to him even if it means lying." (*Id.*).

Prior convictions that are inadmissible under Rules 608 and 609 to prove a witness's character for untruthfulness may still come in as non-character evidence, such as bias, under Rule 404(b)(2). *See Ricketts v. City of Hartford*, 74 F.3d 1397, 1412 (2d Cir. 1996) ("We have determined, however, that this rule does not operate to require the exclusion of impeachment evidence that demonstrates the witness' bias, as opposed to his character for untruthfulness."); 4 Weinstein's Federal Evidence § 608.20[3][b], at 608-42 to -44.1. Defendant has persuasively set forth the reasons why Ms. Gigliotti's arrest by Defendant and subsequent drug conviction are relevant to Ms. Gigliotti's potential bias against Defendant specifically—as opposed to police officers generally. *Cf. Outley v. City of New York*, 837 F.2d 587, 594 (2d Cir. 1988) (finding that evidence of the plaintiff's prior lawsuits against police officers was "too remote" to infer the plaintiff's bias against other police officers). The only remaining issue is whether the conviction's probative value is substantially outweighed by its prejudicial effect under Rule 403. The only prejudice Plaintiff discerns is that "Ms. Vigliotti was the only eyewitness to the events of question," and admitting the conviction would "prevent the plaintiff from receiving fair

5

consideration of his retaliation claims." (Dkt. No. 193, at 5-6). But Defendant is entitled to challenge the credibility of the evidence brought against him. Consequently, the Court finds that Ms. Vigliotti's 2009 drug misdemeanor conviction is admissible to show bias.

### 3. Plaintiff's Prison Disciplinary Records

Plaintiff seeks to exclude his prison disciplinary records, arguing that the records constitute impermissible character evidence under Rule 404(b)(1). (*Id.* at 6). Defendant responds that Plaintiff was "disciplined during his incarceration for possession of prison contraband and for resisting the orders of corrections officers," and that this evidence would "show his habits of resisting the orders of law enforcement officers and of criminally possessing contraband." (Dkt. No. 205-5, at 6). As the Court explained in its September 15, 2017 memorandum-decision and order, habit under Rule 406 refers to a person's regular, semi-automatic response to a repeated specific situation. (Dkt. No. 219, at 7-8). Plaintiff's conduct while in custody does not approach the kind of regularity that would qualify as habit evidence. Since Defendant's proffer constitutes impermissible character evidence, Plaintiff's prison disciplinary records must be excluded.

### 4. Previous Litigation by Plaintiff

In his motion in limine, Plaintiff seeks to bar the admission of evidence concerning his previous lawsuits. (Dkt. No. 193, at 1). At the pre-trial conference held on September 13, 2017, the parties confirmed that they would not introduce evidence of Plaintiff's unrelated litigation.

### 5. Settlement Discussions

Plaintiff's motion in limine also requests that evidence of settlement discussions be excluded. (*Id.*). Per the parties' agreement, no such evidence will be introduced.

### 6. Defendant's Military Service and Medical Condition

Plaintiff asks in his motion in limine that no reference be made to "the facts that the defendant was injured in Iraq, any injuries he may have sustained, and/or his medical condition,"

6

reasoning that the injuries arose after the events at issue, and such a reference would "garner juror sympathy, and distract from the constitutional issues." (*Id.* at 1, 9). At the pre-trial conference, the parties concurred that Iraq need not be mentioned, and Plaintiff agreed that Defendant could testify to a medical condition that arose after the events and has prevented him from resuming his duties as a police officer. But Plaintiff objected, on relevance grounds, to any mention of Defendant's military service. Because the jury should be able to hear testimony about Defendant's employment history, including his military service, the Court denies Plaintiff's request.

### 7.     Civilian Clothes and Shackles

Plaintiff moves for permission to appear in civilian clothes without restraints. (*Id.* at 1). At the pre-trial conference, the Court granted the request to appear in civilian clothing and informed the parties that it would rule on the restraint issue after conferring with security officials on the morning of trial.

### 8.     Evidence Relating to Dismissed Malicious Prosecution Claim

Lastly, Plaintiff requests the admission of "certain evidence relating to his (dismissed) malicious prosecution claim in the interests of justice" or, alternatively, the admission of such evidence "in furtherance of any of the three remaining claims . . . and/or for questions involving credibility." (*Id.* at 2 & n.1). The Court dismissed Plaintiff's malicious prosecution claim over three years ago, on January 8, 2014, because "the criminal prosecution of Plaintiff was not terminated 'favorably' for purposes of a malicious prosecution suit." (*See* Dkt. No. 73, at 5). There is no basis to admit evidence for the purpose of establishing the dismissed malicious prosecution claim. To the extent that Plaintiff seeks to introduce evidence relevant to his other claims or for purposes of impeachment, the Court will rule on the admissibility of this evidence if and when the evidence is presented at trial.

### B.    Defendant's Motion in Limine

#### 1.    Fourth Department Decision

Defendant seeks an order precluding Plaintiff "from making reference to the terms of or reasons for the reversal of his criminal convictions by the New York State Appellate Division, Fourth Department" and permitting Plaintiff only to state that the convictions were reversed on appeal. (Dkt. No. 180, ¶ 1). Defendant maintains that he is not bound by the Fourth Department's decision, among other reasons, because he was not a party to the criminal proceeding. (Dkt. No. 180-3, at 4). Further, Defendant argues that the jury in this case, tasked with "resolv[ing] the factual issues," will be confused by the Fourth Department's "factual findings and rulings" and will be "so (improperly) impressed by the fact that the Fourth Department ruled adversely on the existence of reasonable suspicion and probable cause that they will automatically rule in Plaintiff's favor without satisfying their duty to conduct an independent review of the facts and make their own factual determinations." (Dkt. No. 180-3, at 5). Plaintiff responds that the Fourth Department's decision is binding on the "identical" issues of reasonable suspicion and probable cause, and argues that Defendant is bound (even though he was not a party to the criminal case) because the Oswego County District Attorney "had defendant's interest in avoiding suppression of the illegally obtained evidence." (Dkt. No. 207-1 at 2-3 (emphasis omitted)). Plaintiff also contends that he should be permitted to introduce the Fourth Department's rulings to dispel "any unfair inferences from the fact that he was arrested and charged with crimes," while "any potential for prejudice may be avoided through appropriate jury instructions." (Dkt. No. 207-1, at 3).

This Court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In *Jenkins v. City of New York*, 478

8

F.3d 76, 85 (2d Cir. 2007), the Second Circuit explained that, under New York law, issue preclusion (also known as collateral estoppel) has two essential elements. "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Id.* (quoting *Juan C. v. Cortines*, 89 N.Y.2d 659, 667 (1997)). Thus, "a nonparty to the prior litigation may be collaterally estopped by a determination in that litigation only if he has 'a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation.'" *Id.* (quoting *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 664 (1990)).

In *Jenkins*, the plaintiff had been arrested on various criminal charges, but after a state trial judge granted the plaintiff's motion to suppress, the charges were dismissed. *Id.* at 82-84. The plaintiff brought claims including false arrest and malicious prosecution under § 1983 against the City of New York and the detectives involved in his arrest. *Id.* at 81. The Second Circuit held that it was error for the district court to give preclusive effect to the state court's finding that the police did not have probable cause to arrest the plaintiff. *Id.* at 86. Since the detectives and the City were not parties to the plaintiff's prior criminal case and were not in privity with the State of New York, the party which brought the criminal charges against the plaintiff, they could not be precluded from asserting that they had probable cause to arrest the plaintiff. *Id.* at 85-86. Following *Jenkins*, courts in this District have repeatedly rejected issue preclusion of the sort sought by Plaintiff. *See, e.g.*, *Workman v. City of Syracuse*, No. 12-cv-00382, 2015 WL 300435, at *3, 2015 U.S. Dist. LEXIS 6982, at *8 (N.D.N.Y. Jan. 22, 2015) (holding that "none of the Defendants may be precluded by the doctrine of collateral estoppel

from litigating any issue decided in the suppression hearing"); *Fowler v. Kingston City Police Dept.*, No. 07-cv-873, 2009 WL 3064775, at *6, 2009 U.S. Dist. LEXIS 86541, at *16 (N.D.N.Y. Sept. 22, 2009) ("Defendants did not have a full and fair opportunity during Fowler's criminal case to litigate the issue of whether they had probable cause to arrest him."); *Williams v. Schultz*, No. 06-cv-1104, 2008 WL 4635383, at *4, 2008 U.S. Dist. LEXIS 112729, at *13-14 (N.D.N.Y. Oct. 16, 2008) ("Defendant is correct that he cannot be bound by [the state court decision], because Defendant was not a party to that action and did not have a full and fair opportunity to contest the prior determination.").

It is uncontroverted that Defendant was not a party to the criminal proceeding brought by the State of New York. Defendant was not in privity with the State, and there is no support for Plaintiff's contention that the Oswego County District Attorney who prosecuted the case represented Defendant's interests. Since Defendant never had an opportunity to litigate the issue of reasonable suspicion or probable cause, the Court holds that the Fourth Department's decision does not have issue-preclusive effect and is not binding on Defendant.

The Court now turns to the question of admissibility. The Fourth Department made certain findings of fact in ruling that Defendant did not have reasonable suspicion to stop Plaintiff. Those factual findings, however, are inadmissible hearsay to the extent that Plaintiff seeks to introduce them to prove the truth of the matter asserted therein—i.e., to establish that the facts were as stated in the decision. *See* Fed. R. Evid. 801, 802 (providing that a statement not made by a witness at the current trial is generally inadmissible if offered to prove the truth of the matter asserted in the statement); *Penree v. Watson*, No. 6:13-cv-01323, 2017 WL 3437680, at *3, 2017 U.S. Dist. LEXIS 126856, at *8 (N.D.N.Y. Aug. 10, 2017) ("[J]udicial findings of fact are inadmissible hearsay."). *Penree* was a § 1983 action where the plaintiffs sued police officers

10

for malicious prosecution, excessive force, and false arrest, among other claims. 2017 WL 3437680, at *1, 2017 U.S. Dist. LEXIS 126856, at *1-2. The defendants sought to exclude a city court decision that dismissed the criminal charges against one of the plaintiffs on the ground that the officers had unlawfully searched the plaintiff's house. *See* 2017 WL 3437680, at *3, 2017 U.S. Dist. LEXIS 126856, at *7-8. The *Penree* court explained that Rule 803(8), which delineates the public records exception to the rule against hearsay, does not apply to judicial findings of fact. *See* 2017 WL 3437680, at *3, 2017 U.S. Dist. LEXIS 126856, at *8-9 (citing cases).

Further, even if the Fourth Department's decision were not inadmissible hearsay, the Court would exclude it under Rule 403. As Defendant points out, there is a significant risk that the jury, once presented with the Fourth Department's view of the facts, will be confused about its own fact-finding role and will improperly defer to the Fourth Department's determinations concerning lack of reasonable suspicion. *See id.* ("As the Fourth Circuit has explained, judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." (quoting *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993)) (internal quotation marks omitted)). Because the resulting confusion, unfair prejudice, and waste of time far outweigh the probative value of the Fourth Department's judicial findings, the Court grants Defendant's request to exclude the Fourth Department's decision. Plaintiff may inform the jury that his convictions were reversed on appeal, but he may not relate the basis for the reversal.

### 2. Post-Arrest Evidence

Defendant seeks to exclude evidence "concerning events or conduct after the point of [Plaintiff's] arrest such as pertaining to the chain of custody of materials seized from the scene of his arrest." (Dkt. No. 180, ¶ 2). Defendant reasons that the unlawful seizure, excessive force, and

false arrest claims at issue in this action concern conduct at the scene of the arrest (that is, at the parking lot), including the use of Defendant's patrol car to stop Plaintiff, Defendant's use of pepper spray on Plaintiff, and Defendant's arrest of Plaintiff. (Dkt. No. 180-3, at 6-7). Further, Defendant argues that the alleged damages from unreasonable seizure and excessive force accrued at the scene, and the damages for false arrest stopped accruing at the latest upon Plaintiff's arraignment on the morning of February 1, 2008. (*Id.* at 6.) At the pre-trial conference, Defendant clarified that post-arrest incidents or statements that shed light on the events at the parking lot, as well as statements or incidents that bear on the credibility of witnesses, would also be relevant if otherwise admissible. In response, Plaintiff argues that Defendant cannot have it both ways, pointing out that Defendant is planning to call Leroy Thompson to testify about events that occurred at the police station after the arrest and to introduce the report of Rodney Carr. (Dkt. No. 207-1, at 3-4). Moreover, Plaintiff contends that the evidence relating to the chain of custody of the drugs shows that Defendant's conduct was "highly suspect," tends to support Plaintiff's allegations that Defendant "planted the cocaine on his person," and supports an inference that Defendant tampered with the drugs—all the while undermining Defendant's version of the events and his credibility. (Dkt. No. 207-1, at 4). Plaintiff and Defendant elaborated on these same points in their supplemental briefing following the pre-trial conference. (*See* Dkt. Nos. 222, 230).

      Unlike the state criminal proceeding, which focused on whether Plaintiff possessed the alleged drugs, the focus of this § 1983 action is Defendant's conduct. However, whether Plaintiff actually had drugs in possession at the time of the stop and subsequent arrest is relevant to the extent that it bears on Defendant's reasonable suspicion for stopping and probable cause for arresting Defendant. Evidence of drugs found during the arrest is admissible for this reason.

12

Conversely, Plaintiff should be permitted to contest Defendant's version of what drugs were found and how.[2] To the extent that defects in the chain of custody contradict Defendant's narrative—for example, as circumstantial evidence that the drugs were not Plaintiff's or were not in the amount indicated in the arrest report—they would be relevant to the jury both for purposes of determining what happened at the scene of the events and assessing Defendant's credibility. The Court therefore denies Defendant's request to exclude chain-of-custody evidence.

### 3.     Defendant's Employment at the Village of Phoenix

In his motion in limine, Defendant asks the Court to preclude Plaintiff from "introducing false, unsubstantiated, self-serving, hearsay assertions at trial that Defendant had been arrested and/or fired from his position as a Village of Phoenix patrolman." (Dkt. No. 180, ¶ 3). At the pre-trial conference, Plaintiff's counsel conceded that none of Plaintiff's witnesses had admissible evidence on this issue.

### 4.     Defendant's Relationship with Resident of Apartment Complex

Defendant's motion in limine requests that the Court preclude testimony concerning Defendant's purported relationship with "a resident of the apartment complex where Plaintiff was arrested." (*Id.* ¶ 4). The parties clarified at the pre-trial conference that this resident was Antoinette Bantin. The Court refers the parties to its September 15, 2017 order, which denied Defendant's request to preclude Ms. Bantin's testimony. (*See* Dkt. No. 219, at 4-6).

---

[2] Plaintiff asks the Court to take judicial notice of the purported "weight discrepancies" between the drugs as weighed by Defendant at the police station and the drugs as weighed by the crime laboratory. (Dkt. No. 222, at 2). The Court, however, cannot take judicial notice of this purported fact. It is neither "generally known within the trial court's jurisdiction" nor can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). It is Plaintiff's burden to establish this purported fact at trial through competent evidence.

### 5. Post-Arraignment Evidence

Defendant seeks to exclude evidence concerning Plaintiff's incarceration or imprisonment beyond the date of his arraignment before the Town of Schroeppel Justice Court on February 1, 2008. (Dkt. No. 180, ¶ 5). According to Defendant, such evidence has no bearing on the events at the parking lot and is irrelevant to Plaintiff's damages because, under New York law, a plaintiff cannot recover for false arrest damages post-arraignment. (*See* Dkt. No. 180-3, at 8-9 (quoting *High v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992))). Without citing any authority in support, Plaintiff responds that his "damages run for his entire period of incarceration" through February 2, 2009 or, at the very least, through May 5, 2008, when his release on bail for another arrest was revoked. (Dkt. No. 207-1, at 5). The Second Circuit in *High* recited the applicable rule in New York that damages for false arrest stop at the point of arraignment. Accordingly, the Court grants Defendant's request to exclude post-arraignment evidence.

### 6. Excessive Force Evidence

Defendant requests the exclusion of any evidence of "alleged use of excessive force against [Plaintiff] other than by use of pepper spray, and specifically barring him from claiming excessive force in handcuffing." (Dkt. No. 180, ¶ 6). Defendant argues that such evidence would circumvent the dismissal of Plaintiff's claim of excessive force in handcuffing. (Dkt. No. 180-3, at 10 (citing Dkt. No. 73, at 4)). Plaintiff acknowledges that he cannot assert this dismissed claim. He maintains, however, that Defendant's mode of handcuffing Plaintiff is evidence of Defendant's brutality and bears on how Plaintiff was treated on the night of the events. (Dkt. No. 207-1, at 6). The Court finds that this evidence is part of the res gestae of the events that occurred on February 1, 2008 and, as such, the Court denies Defendant's request.

### 7. Plaintiff's Criminal History

In his motion in limine, Defendant seeks permission to introduce evidence of Plaintiff's past convictions. (Dkt. No. 180, ¶ 7). The Court refers the parties to its rulings on the very same topic raised in Plaintiff's motion in limine. (*See supra* Part II.A.1).

### 8. Evidence of Materials Found and Statements Made at Time of Arrest

Defendant also requests permission to introduce evidence regarding materials, including drugs, drug paraphernalia, and cash discovered on Plaintiff or in the vicinity of the place of the arrest on February 1, 2008, as well as statements made by Plaintiff and others concerning these events. (Dkt. No. 180, ¶ 8). Plaintiff contends that the materials should be excluded as "fruits of the poisonous tree." That doctrine, however, is inapplicable to civil cases. *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999). Moreover, as discussed above (*see supra* Part II.B.2), these materials form part of the operative events that occurred on February 1, 2008, and are relevant to whether Defendant had reasonable suspicion to stop or probable cause to arrest Plaintiff. Provided a proper foundation is laid, and unless a proper objection is sustained at trial, the Court preliminarily finds these materials to be admissible. As for statements made by Plaintiff and others concerning the same events, the Court will determine whether specific statements are admissible at trial, after considering their foundation, contents, and purpose, as well as any proper objections.

### 9. Redactions to D-5 and D-6

In a letter dated September 15, 2017, Defendant opposed Plaintiff's proposed redactions of Defendant's Exhibits D-5 (Incident Report by Defendant Dated February 1, 2008) and D-6 (Arrest Report by Defendant Dated February 1, 2008). (Dkt. No. 220). Since Plaintiff has not yet presented the Court with his rationale for the proposed redactions, the Court will defer its decision on the proposed redactions until trial.

## III.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion in limine (Dkt. No. 193) is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Defendant's motion in limine (Dkt. No. 180) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Dated:  September 22, 2017
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge